UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KIESHIA MACE,<br><br>　　　　　Plaintiff,<br><br><br>　　vs.<br><br>COREY WILLIS, INDIVIDUALLY;<br>KICKBOX DAKOTA, LLC, A SOUTH<br>DAKOTA LIMITED LIABILITY<br>COMPANY; AND DAVID BORCHARDT,<br><br>　　　　　Defendants. | 4:16-CV-04150-VLD<br><br><br><br><br>MEMORANDUM OPINION |

## INTRODUCTION

Plaintiff Kieshia Mace brings suit against Corey Willis; Kickbox Dakota,

LLC; and David Borchardt.  Ms. Mace asks for damages for violation of the

Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38

U.S.C. §§ 4301-4335.[1]

---

[1] Ms. Mace originally pleaded two state-law based claims for wages in her
complaint.  See Docket No. 1, Counts II and VI [III] at pp. 5-6.  However, prior
to trial she voluntarily dismissed these claims.  See Docket No. 20.  The court
granted the motion. See Docket No. 21.

## FINDINGS OF FACT

The following facts have been established by the greater weight of the evidence.  Kieshia Mace first was employed by defendant Kickbox Dakota, LLC ("Kickbox"), on April 25, 2016.  <u>See</u> Exhibit 6 at p. 1.  Kickbox is a 9Rounds franchise owned by defendant Corey Willis and his wife.  They operate Kickbox in two locations—Kickbox east and Kickbox west—both in Sioux Falls, South Dakota.  Ms. Mace was hired by Corey Willis on a part-time basis at a rate of $12.00 per hour.  She was not guaranteed specific hours, but she averaged about 15 hours per week.  At the time of her hiring, Ms. Mace also worked part-time for another Sioux Falls employer.  Mr. Willis told Ms. Mace she might potentially become the manager of one of his locations if she completed some computer training, some physical testing, and a written test.

Defendant David Borchardt was a general manager employed by Kickbox.  At the end of July and beginning of August, 2016, Mr. Borchardt was in charge of creating employees' work schedules.  Mr. Borchardt was the manager of one of the Kickbox locations where Ms. Mace worked and acted as her supervisor.  Mr. Borchardt did not have the power to fire employees.

Upon being hired, Ms. Mace informed Mr. Willis that she was a member of a National Guard unit out of Sioux City, Iowa,[2] and that Ms. Mace would need to attend National Guard training for approximately three weeks in the summer.  Ms. Mace later timely supplied the additional details that she would be required to leave for Alaska to attend this training on July 15, 2016, and

_____

[2] Sioux City, Iowa, is approximately 90 miles south of Sioux Falls, South Dakota.

would return from training August 8, 2016.  See Exhibit 10.  Kickbox and Mr. Willis knew the reason for Ms. Mace's absence was due to mandatory military training.  Id.

In mid- to late May, Ms. Mace quit her other part-time job in order to make herself more available to work hours at Kickbox.  She informed Mr. Willis of this fact.  She expressed the hope that she could be scheduled for more hours—perhaps as much as 30 hours--at Kickbox.  However, prior to her departure for military training, she continued to work an average of 15 hours per week.[3]  At no time did Kickbox ever guarantee Ms. Mace that she would work a certain number of hours.

Kickbox uses an application ("app") to schedule its employees to work.  That app is called "When I Work."  The app allows employers to set schedules for its employees and share the schedules over the internet.  Employees can then log onto the schedule using their smart phones or computers and see what their work schedule is.  Although Kickbox created its employee schedules a month ahead of time, the employees could only access the schedule one week at a time, approximately two days before the start of that week.  Despite the fact Kickbox created its employee schedules a month ahead of time, Ms. Mace testified there were numerous times when Corey would call her in to work on an impromptu basis to fill in for other employees who did not show up for their shifts.

---

[3] Ms. Mace worked 12 weeks for Kickbox from April 25, 2016, to July 15, 2016.  During that time she worked 163.38 hours or approximately 13.6 hours per week (163.38 ÷ 12 = 13.6).

9Rounds provides its franchisees an employee handbook.  That handbook was supplied to Kickbox.  The 9Rounds handbook contains a provision specifically related to military leave.  Mr. Willis admitted he was expected by 9Rounds to be familiar with the provisions of this employee handbook.[4]

Ms. Mace worked at Kickbox on July 15, 2016, and later that same day, departed for Alaska to fulfill her military obligation.  While she was away, Corey Willis removed Ms. Mace from the When I Work app.  He testified he had two reasons for doing so.  First, he would be charged an extra $11.00 for the month of August if Ms. Mace were kept on the app.  He also testified it is easier for his managers to schedule employees to work if the only employees whose names appear on the app are those employees available to work.  Mr. Willis never told Ms. Mace he had removed her from the scheduling app.  Only one other employee has ever been removed from the When I Work app by Kickbox.  That employee was Michaela, who was a nurse who worked the night shift and whose schedule just did not allow her to work at Kickbox during its open hours.  Defendants have all conceded that Ms. Mace's removal from the scheduling app had nothing to do with her performance at work.  See Exhibit 10.

Mr. Borchardt drew up the employee schedule for August, 2016, at the beginning of August.  That schedule did not include any hours for Ms. Mace

---

[4] Although Mr. Willis gave this testimony about the handbook, the handbook itself was not offered or received into evidence and no testimony was introduced specifically describing the military leave provision in the handbook.

because her name was not available to Mr. Borchardt for scheduling on the When I Work app.  Mr. Willis hired a new part-time employee, Alexandra, on August 5, 2016.  See Exhibit 6 at p. 2.  Mr. Borchardt accommodated this hiring by working Alexandra into the employee schedule.  Alexandra's first day of work for Kickbox (east) was August 10, 2016.  See Exhibit 8 at p. 5.[5] Mr. Borchardt had the authority to take employees off the schedule, to add them to the schedule, and to shift schedules between employees.

Ms. Mace returned to Sioux Falls following her military training on August 8, 2016.  She immediately tried to log onto the "When I Work" app, but the app no longer accepted her sign-on information.  While in Alaska, Ms. Mace had not had access to the internet at all.  She assumed her log-in information to the When I Work app had simply timed out because it had been inactive for so long.

Ms. Mace sent a text to Corey Willis that same day, August 8, inquiring about the situation with the When I Work app.  She was concerned that because Mr. Willis knew she was returning from National Guard duty on August 8, she might already be scheduled to work on the 8th and might miss her shift.

Mr. Willis did not respond to Ms. Mace's text.  So next she telephoned him on August 9, 2016.  He did not answer his phone, so she left him a voice

---

[5] The double-sided pages of Exhibit 8 are not numbered.  The court assigned numbers for ease of reference with each side of each page receiving a number. The pages are thus numbered from 1-48, with pages 12,16, 20, 24, 28, 32, 36, 40, 44, and 48 being blank.

mail message explaining that she was unable to access the When I Work app and that she was wondering when she was next scheduled to work.

Meanwhile, on August 10, 2016, Mr. Willis hired Michael, another new part-time employee. See Exhibit 6 at p. 2. Mr. Borchardt was able to work Michael into the pre-existing work schedule for August. Michael's first day on the job with Kickbox (east) was August 16, 2016. See Exhibit 8 at p. 33. Both Alexandra and Michael were hired at a lower hourly wage than Ms. Mace.

On the evening of August 9, 2016, Ms. Mace's mother asked Ms. Mace if she would take an airplane trip to return Caleb, Ms. Mace's five-year-old nephew, to his father, Ms. Mace's brother, in Colorado. Because Mr. Willis had not yet responded to her text or voice mail message, Ms. Mace agreed to perform this service for her mother. The airplane tickets were purchased the evening of August 9 and Ms. Mace and her nephew flew to Colorado on August 10. Ms. Mace stayed overnight at her brother's house only the evening of August 10 and returned to Sioux Falls on August 11. Had Kickbox responded to any of her inquiries to indicate she was scheduled to work, Ms. Mace would not have gone on this trip to Colorado.

On August 10, 2016, Corey Willis called Ms. Mace and left the following voice mail message on Ms. Mace's phone.

> Hey Kieshia, it's Corey. Um, I'm just calling you back. Uh, but yeah, um, we had to take you off the scheduler. Um, we, we hired some new people and we needed some room on, on scheduling and, so, um, you were gone for three weeks, and by three weeks we take you off. If you have any questions, just give myself a call back or, um, call David. David's kind of in that role with taking on the employees' situation now. So, yeah, give one of us a call. If you

6

can't reach me either just give David a call.  All right.  Talk to you
later.

<u>See</u> Exhibit 7.[6]

After receiving this message from Corey Willis, Ms. Mace telephoned
David Borchardt on August 11, 2016, because she interpreted Mr. Willis'
message to indicate that Mr. Borchardt was in charge of scheduling.  At this
time, she left a message asking him to call her.  Mr. Borchardt returned
Ms. Mace's phone call on the morning of August 13, 2016.[7]  Just prior to this
phone call, Ms. Mace had tried again to log onto the When I Work app and was
still unable to do so.  Ms. Mace made this phone call to Mr. Borchardt while
riding in a motor vehicle with two of her friends, one of whom was Kendra
Nelsen.  Ms. Mace placed the call using the speaker phone function because
she explained the speaker for private conversations was inoperable on her
phone.

Ms. Mace and Ms. Nelsen both recounted the conversation with
Mr. Borchardt as follows.  Ms. Mace asked about her work schedule.
Mr. Borchardt seemed confused.  Mr. Borchardt stated that he had had
conversations with Mr. Willis from which Mr. Borchardt understood Ms. Mace

---

[6] The exhibit is marked as "August 12," voice mail message, but Ms. Mace
testified Mr. Willis left the message while she was in the airplane with her
phone turned off on either August 10 or 11.  As between these three dates—
August 10, 11 or 12—the specific date is immaterial.

[7] Testimony established that the phone call between Ms. Mace and Mr.
Borchardt took place on either August 12 or 13.  As between these two days,
the difference is immaterial.  Ms. Mace testified Mr. Borchardt called her;
Kendra Nelsen testified Ms. Mace initiated the phone call.  This discrepancy,
too, is immaterial.

would not be returning to work at Kickbox.  He stated Kickbox did not have any hours for her.  She was gone for a month and Kickbox had to replace her. Borchardt could not put her on the schedule.  Ms. Mace asked to clarify.  She stated:  "I had a job before I left for Alaska; now you have no hours for me?  I've been replaced?"  Mr. Borchardt confirmed this.  Both Ms. Mace and Ms. Nelsen concluded Kickbox had terminated Ms. Mace's employment based on what Mr. Borchardt said.  Even Mr. Borchardt and Mr. Willis agreed at trial that the conclusion they had terminated Ms. Mace was not unreasonable, given the information they relayed to Ms. Mace.

Ms. Mace then advised Mr. Borchardt that Kickbox's action was in violation of federal law.  She informed Mr. Borchardt that she was going to consult her commanding officer in the National Guard and also an attorney. Only at this point did Mr. Borchardt suggest perhaps Ms. Mace and he could have a conversation about this matter with Corey Willis and "work things out." At no time did Mr. Borchardt indicate he would place Ms. Mace on the schedule, either in the near future or at any other time.  At no time did Mr. Willis ever tell Ms. Mace he would place her on the Kickbox work schedule, either in the near future or at any other time.

A short time after the conversation between Ms. Mace and Mr. Borchardt concluded, Mr. Willis attempted to telephone Ms. Mace.  She did not take his phone call as she wanted to speak with her commanding officer and a lawyer to clarify what her rights were before talking to Mr. Willis.  No other communications or attempts at communications took place between the parties

8

until late August, 2016.  In approximately the third week of August, a part-time Kickbox employee quit.  This prompted Mr. Willis to send Ms. Mace a letter offering to place her back on the Kickbox schedule.  Ms. Mace did not respond to the letter.

At trial, both Mr. Willis and Mr. Borchardt testified if Ms. Mace had had a face-to-face meeting with them after she returned from Guard duty, they could have placed her back on the schedule.  Both defendants admitted this requirement is not in writing anywhere at Kickbox.  Both defendants admitted neither of them advised Ms. Mace of this requirement of a prior meeting when they had contact with her in August, 2016.

After talking to an attorney, Mr. Willis requested David Borchardt to draft an email documenting what he then remembered about his phone conversation with Ms. Mace on August 13.  Mr. Borchardt drafted the requested email October 6, 2016, some two months after the conversation when litigation was already contemplated.  In the email Mr. Borchardt recounted that he told Ms. Mace he was not sure when or if he could get her back on the work schedule.

Ms. Mace was unemployed from August 8, 2016, until she found a replacement job at $11.50 per hour on September 19, 2016.  She is asking for lost wages for this period of unemployment.  She is not seeking lost wages based on the differential between her $12.00 per hour wage at Kickbox and her $11.50 per hour wage at her new job.

## DISCUSSION

### A.   Overview of USERRA

Congress declared that one of the primary reasons for enacting USERRA is to provide for the "prompt reemployment" of persons performing service in the uniformed services upon completion of their military service.  See 38 U.S.C. § 4301(a)(2).  The National Guard is included in the definition of "uniformed services."  See 38 U.S.C. § 4303(16).  USERRA is to be broadly construed in favor of its military beneficiaries.  Dorris v. TXD Services, LP, 753 F.3d 740, 745 (8th Cir. 2014).  As the latest in a series of laws protecting veterans' employment and reemployment rights, USERRA is to be interpreted in light of the large body of case law that had developed under previous iterations of federal laws protecting veterans' employment rights to the extent prior caselaw is not inconsistent with USERRA.  Vahey v. General Motors Co., 985 F. Supp. 2d 51, 57 (D.D.C. 2013) (quoting Rivera-Melendez v. Pfizer Pharms., LLC, 730 F.3d 49, 54 (1st Cir. 2013); 20 C.F.R. § 4301(a)).

USERRA provides that a person who is a member of a uniformed service shall not be denied reemployment on the basis of her membership in that uniformed service.  See 38 U.S.C. § 4311(a).  An employer is considered to have engaged in actions prohibited by USERRA where the employee's membership in a uniformed service "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . or obligation for service."  See 38 U.S.C. § 4311(c).

10

A person who must absent themselves from their job by reason of military service is entitled to be "promptly reemployed" if they give advance written or verbal notice of the anticipated absence to their employer and they are absent for less than five years. <u>See</u> 38 U.S.C. §§ 4312(a), 4313(a). If the service person was absent from her job for less than 31 days, she must notify her employer of her intent to return to her job no later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of military service. <u>See id.</u> at subsection (e)(1)(A). An employer may not delay its reemployment obligation by demanding documentation that does not exist or is not readily available. <u>Id.</u> at subsection (f)(4). There are a number of statutory affirmative defenses to reemployment, none of which any of the three defendants herein have invoked. <u>Id.</u> at subsection (d). It is the employer's burden to show the impossibility or unreasonableness of reemployment. <u>Davis v. Crothall Serv. Grp., Inc.</u>, 961 F. Supp. 2d 716, 727 (W.D. Pa. 2013); <u>Milhauser v. Minco Products, Inc.</u>, 855 F. Supp. 2d 885, 891 (D. Minn. 2012) (citing § 4312(d)(2)).

A military person who obtains reemployment under USERRA is entitled to the seniority and accompanying benefits they had as of the date their military service began, plus any additional seniority and benefits they would have obtained had they remained continuously employed. <u>See</u> 38 U.S.C. § 4316(a). Once a military person is reemployed in their former job, their employment cannot be terminated except for cause for the first 180 days they are back on the job if, prior to military service, they had been in their job for

between 31 and 180 days.  See 38 U.S.C. § 4316(c)(2).  The burden is on the employer to demonstrate "cause" for termination and also to demonstrate that the employee had express or implied notice that the conduct constituted cause for discharge.  Johnson v. Michigan Claim Service, Inc.. 471 F. Supp. 2d 967, 972-73 (D. Minn. 2007) (citing Hillman v. Arkansas Highway & Transport. Dept., 39 F.3d 197, 200 (8th Cir. 1994); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006); and 20 C.F.R. § 1002.248(a)).  "Cause" under USERRA is liberally construed and strictly enforced for the benefit of military beneficiaries of the act.  Johnson, 471 F. Supp. 2d at 973.

If the military person who leaves employment to engage in military service knowingly provides written notice to their employer that they do not intend to return to their position of employment, the benefits of USERRA do not apply.  See 38 U.S.C. § 4316(b)(2)A.  The burden of proof is on the employer to demonstrate the military person provided clear written notice of their intent not to return to employment.  Id. at subsection (b)(2)(B).

The rights  conferred under USERRA as against a private employer may be enforced by bringing a claim in federal district court by the military person aggrieved.  See 38 U.S.C. § 4323(a)(3).  Venue for such an action is proper in the district where the private employer maintains its business.  Id. at subsection (c).  Remedies available for violations of USERRA include: (1) injunctive relief, (2) lost wages or benefits suffered as a result of the USERRA violation, and (3) liquidated damages in an amount equal to the

12

amount of lost wages or benefits if the employer's violation was willful.  Id. at subsection (d)(1).

"Willful" means the employer knew it was violating USERRA or acted with reckless disregard to whether it was doing so.  See 20 C.F.R. § 1002.312.  Cf. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (1985) (interpreting the term "willful" under the Age Discrimination in Employment Act to mean the employer knew its conduct was prohibited or it acted with reckless disregard to whether its conduct was prohibited).  The burden is on the plaintiff to show willfulness.  Davis, 961 F. Supp. 2d at 736 (citing Paxton v. City of Montebello, 712 F. Supp. 2d 1017, 1021 (E.D. Cal. 2010) (citing EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1250 (11th Cir. 1997))).  Merely knowing that a military beneficiary was asserting a USERRA claim is not, by itself, reckless disregard where, for example, the employer's decision was based on the exercise of business judgment such as the employer's financial hardship.  Duarte v. Agilent Technologies, Inc., 366 F. Supp. 2d 1039, 1048 (D. Colo. 2005).  Where the employer failed to respond to the reinstatement request for over two months, willfulness was found.  Serricchio v. Wachovia Securities LLC, 658 F.3d 169, 191 (2d Cir. 2011).  A service member asserting a failure or refusal by his employer to grant reemployment in violation of § 4312 need not prove discrimination.  Id.; 20 U.S.C. § 1002.33.  A willful violation of the duty to "promptly reemploy" a returning service member under § 4312 gives rise to liability for liquidated damages.  Serricchio, 658 F.3d at 191-92.

A military person who prevails on a claim under USERRA and who retained a private attorney to bring that claim may also be awarded reasonable attorney's fees, expert witness costs and litigation expenses.  See 38 U.S.C. § 4323(h); 20 C.F.R. § 1002.310.

The Secretary of the Department of Labor is empowered to promulgate regulations implementing USERRA.  See 38 U.S.C. § 4331.

**B.     Application of the Law to Ms. Mace's Claims**

**1.     Reemployment Under § 4312**

Section 4312 provides for nearly strict liability for failure or refusal to promptly reemploy a returning service member to his or her former employment.  The only exceptions to liability are (1) if the service member fails to give proper notice before leaving and upon return or (2) if the employer demonstrates that the employer's circumstances have changed so that it is impossible or unreasonable to reemploy the service member.  See 38 U.S.C. § 4312(a) & (d).

The parties do not dispute that Ms. Mace gave proper notice of her military service in advance of her leave or that she gave proper notice upon her return.  None of the three defendants pleaded any of USERRA's affirmative defenses from § 4312(d) in their answers.  See Docket Nos. 5-7.  The court considers the rationales they provided at trial through their oral testimony.

Mr. Willis testified he removed Ms. Mace from the When I Work app to save money ($11 per month) and to make it easier for employees like Mr. Borchardt to whom scheduling duties were delegated.  As Mr. Willis

explained, it is easier to schedule if the only names available to the employee putting together the schedule are those names of employees who are readily available to work.  Neither of these reasons constitutes a valid defense under § 4312.

Mr. Willis and Mr. Borchardt also both testified that Ms. Mace had been replaced by the time she came back and the schedule for August, which was created at the beginning of August, was full.  They testified they had no hours to give Ms. Mace because those hours had been taken up by other employees, including employees hired to replace Ms. Mace.  This also is not a valid defense to a § 4312 claim.

"If mere replacement of the employee would exempt an employer from [USERRA], its protections would be meaningless."  Davis, 961 F. Supp. 2d at 727 (quoting Cole v. Swint, 961 F.2d 58, 60 (5th Cir. 1992)).  Under USERRA, "an employer may not 'refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee.' "  Davis, 961 F. Supp. 2d at 730 (quoting 20 C.F.R. § 1002.139(a)).  "A returning veteran will not be denied his rightful position because the employer will be forced to displace another employee."  Id. (quoting Nichols v. Dept. of Veterans Affairs, 11 F.3d 160, 163 (Fed. Cir. 1993)).  An employer cannot claim as a defense that it will be required to "bump" or demote one of its present employees.  Goggin v. Lincoln St. Louis, 702 F.2d 698, 703-04 (8th Cir. 1983).  "USERRA requires that 'the employee should be restored to

15

his position even though he has been temporarily replaced by a substitute who has been able . . . to make it desirable to make the change permanent.' " Davis, 961 F. Supp. 2d at 731 (quoting Kay v. Gen. Cable Corp., 144 F.2d 653, 655-56 (3d Cir. 1944)).

Mr. Willis testified he would have refused employment to any employee who was absent for three weeks, regardless of the reason why they were absent.  But a business decision, even one that is facially neutral, is not a defense to a claim under § 4312.

The Sixth Circuit in Petty addressed the "neutrality" defense by an employer in a reemployment claim under § 4312 of USERRA.  See Petty v. Metropolitan Govt. of Nashville-Davidson Co., 538 F.3d 431 (6th Cir. 2008).  In that case, the employer refused to reemploy a returning service member until he had undergone a complete battery of physical and psychological tests as well as a military and medical records review.  Petty, 538 F.3d at 436.  When it was sued for violating USERRA, the employer defended by asserting that all employees who were absent from work for an extended period of time, regardless of the reason, were required to undergo the same evaluation process to make sure they were still fit to perform their jobs.  Id. at 442.  The Sixth Circuit rejected the employer's rationale, noting that USERRA "supersedes any 'policy, plan [or] practice' that 'reduces, limits, or eliminates in any manner any right or benefit' provided by USERRA."  Id.  The conclusion that an employer's procedure or practice is nondiscriminatory is not relevant to a claim brought under § 4312 because proof of discriminatory intent is not required to sustain

16

a reemployment claim.  Id. (citing 20 C.F.R. § 1002.33; Francis, 452 F.3d at 303).

Another argument raised by defense counsel is that Ms. Mace "jumped the gun" by not waiting longer for defendants to put her on the schedule. Ms. Mace notified defendants of her availability and desire to return to work the first full day after her return from military duty, as USERRA required her to do.  That date was August 8, 2016.  Mr. Willis did not respond to her text.  The next day, August 9, 2016, Ms. Mace telephoned and left a voice mail message. Mr. Willis did not respond to this message until August 10 or 11, 2016.  When he did respond, Mr. Willis did not offer to put Ms. Mace back on the schedule. His message was she had been replaced because she was gone.  The message was clear enough at this point that defendants had no intention of reemploying Ms. Mace.

When Ms. Mace spoke to Mr. Borchardt, the message was the same.  He told her the schedule was full, she had been replaced, and they had no hours for her.  Even after Ms. Mace told Mr. Borchardt she believed defendants were violating the law, Mr. Borchardt only offered to sit down and talk with her and Mr. Willis.  He did not offer to reemploy her or get her back on the schedule.

In late August, 2016, an employee of Kickbox quit their job.  This prompted Mr. Willis to write a letter to Ms. Mace apologizing for the earlier "miscommunication" and offering—for the first time—to reemploy her. Although undated, defendants conceded the letter would have been written approximately three weeks after Ms. Mace returned from military duty.

17

But defendants were required by USERRA to *promptly* reemploy Ms. Mace.  The regulations implementing USERRA establish the following guidance for the phrase "prompt reemployment":

> "Prompt reemployment" means as soon as practicable under the circumstances of each case.  Absent unusual circumstances, reemployment must occur within two weeks of the employee's application for reemployment.  For example, prompt reinstatement after a weekend of National Guard duty generally means the next regularly scheduled working day.  On the other hand, prompt reinstatement following several years of active duty may require more time, because the employer may have to reassign or give notice to another employee who occupied the returning employee's position.

See 20 C.F.R. § 1002.181.  See also Rogers v. San Antonio, 392 F.3d 758, 763 (5th Cir. 2004) (quoting language from the regulation).

In Serricchio, the Second Circuit found the employer violated USERRA when it failed to reemploy the employee for over four months following his request for reemployment and where the employee's military leave had lasted approximately two years.  Serricchio, 658 F.3d at 177, 182.  In Petty, the Sixth Circuit found the employer violated USERRA when it failed to reemploy the military beneficiary for a period of three weeks where the employee's military leave lasted approximately 15 months.  Petty, 538 F.3d at 435-36, 444.  In Vander Wal, the employer's reemployment of two plaintiffs on the day one said he was first available, and seven days after the second requested reemployment satisfied the "prompt reemployment" requirement.  Vander Wal v. Sykes Enterprises, Inc., 377 F. Supp. 2d 738, 746-47 (D.N.D. 2005).

By these standards, defendants' offer to reemploy Ms. Mace some three weeks after she had notified them she had returned from military service and

18

was ready, willing, and able to work was not "prompt."  The workforce at Kickbox at the time was approximately 11 employees besides Mr. Borchardt and Mr. Willis.  It appears to have been entirely made up of part-time employees who worked, like Ms. Mace herself, far fewer than 20 hours per week.  Defendants could and did adjust the schedule on the fly as various employees failed to show up for work for a designated shift.  And although the defendants knew the schedule for a month in advance, the employees knew the schedule only a week in advance.  Even if defendants had wanted to spare an employee's feelings by not "bumping" them in favor of Ms. Mace, they could easily have put her on the schedule for the week following August 8 and no employee would have been the wiser.  Furthermore, Alexandra and Michael were both hired after the August schedule had been created and both were easily incorporated into the schedule and rather immediately given hours to work.

The court rejects unequivocally defendants' post-hoc rationalization that Ms. Mace needed to sit down with them in a face-to-face meeting and visit before they put her back to work.  This rationale was rejected in Petty.  Additionally, defendants never communicated this "requirement" to Ms. Mace when she was asking to be reemployed.

The court finds Ms. Mace has demonstrated that defendants failed to promptly reemploy her pursuant to § 4312 after she provided proper notice of her military leave both before and after it occurred.  Defendants have not put

19

forth a valid defense to that claim.  Accordingly, judgment will enter in favor of

Ms. Mace on this claim.

### 2.    Discrimination Under § 4311

The Eighth Circuit has stated the following about the interplay between

sections 4311 and 4312 of USERRA:

> Section 4312 protects service members at the instant of seeking
> employment, entitling the service member to reemployment in
> either the position she would have been in had she not left for
> military service [or a like position].  Section 4311 applies after
> reemployment has occurred and "prohibits discrimination with
> respect to any benefit of employment against persons who serve in
> the armed services after they return from a deployment and are
> reemployed.

See Clegg v. Ark. Dept. of Corr., 496 F.3d 922, 930 (8th Cir. 2007) (citations

omitted).  See also Francis, 452 F.3d 304 (holding § 4312 protects service

members up to the instant of reemployment while other sections of USERRA

such as §§ 4311 and 4316 apply post-reemployment).

Some courts have interpreted this statement in Clegg to mean that

section 4311 and section 4312 claims are mutually exclusive, with one statute

applying prior to reemployment and the other statute applying post-

reemployment.  Hays v. Communication Tech., Inc., 753 F. Supp. 2d 891, 901-

02 (S.D. Iowa 2010).   This understanding, however, may be wrong.

Sections 4312 and 4311 are not mutually exclusive in all factual

situations.  In the context of the Clegg case itself, holding that sections 4312

and 4311 presented an either-or choice was undeniably correct.  Clegg was

reemployed after she returned from a 15-month deployment to Iraq.  Clegg, 496

F.3d at 924-25.  She was reinstated at the same grade, in the same department

20

with two cost-of-living adjustments to her salary that had occurred while she was deployed.  Id.  Thus, in this context, the court rejected her strict-liability claim under § 4312, which addresses *only* failure to obtain reemployment.  Id. at 930.

The situation in the Francis case was similar—the plaintiff there had been reemployed, but sought to assert a claim under § 4312's easier rubric, easier because § 4312 did not require proof of discrimination.  Francis, 452 F.3d at 301, 303.  However, in the obverse situation from Clegg and Francis, where an employee is *not* reemployed, there is nothing textually within USERRA that would limit a plaintiff to asserting a claim under *only* § 4312.  In other words, in the case of an employer who is alleged to have violated USERRA by not reemploying the service member, sections 4312 and 4311 are not mutually exclusive.

The pertinent text of § 4311 reads:  "A person who is a member of . . . a uniformed service shall not be denied initial employment, [or] reemployment. . ."  See 38 U.S.C. § 4311(a).  It also provides that "an employer shall be considered to have engaged in actions prohibited—under subsection (a), if the person's . . . service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service."  See 38 U.S.C. § 4311(c)(1).  Thus, contrary to the Hays court's interpretation of Clegg, § 4311 specifically contemplates a claim of discrimination under that provision for a failure to reemploy.  See § 4311(a) & (c)(1).

Contrast the lack of limiting language in § 4311 with the following language in § 4316: "*A person who is reemployed* under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." See 38 U.S.C. § 4316(a) (emphasis supplied). Thus, when Congress sought to limit the application of a provision under USERRA to those circumstances where the service member is given reemployment, as in § 4316, Congress knew how to so limit the statute. No such limiting language in present in § 4311.

Thus, the court concludes § 4311 is facially available to a service member who seeks reemployment and is not given reemployment. There are probably few cases, however, in which a plaintiff who has not been reemployed would wish to take on the additional burden of proving discriminatory intent under § 4311 when she does not have to satisfy that burden under § 4312.

If a discrimination claim is available to Ms. Mace under § 4311, she would have the burden to show by direct or circumstantial evidence that her military service was a motivating factor in defendants' refusal to reemploy her. Rademacher v. HBE Corp., 645 F.3d 1005, 1010 (8th Cir. 2011); Sheehan v. Dept. of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001). The employer's explanation for the action it took may be considered in deciding whether the service member has shown her military service was part of the motivation for the discriminatory action. Sheehan, 240 F.3d at 1014. Other indicia of

22

discriminatory intent are expressions of hostility toward the military, knowledge of the employee's military activity, proximity in time between the employee's military activity and the adverse employment action, and inconsistencies between the employer's proffered reasons and its actions. Rademacher, 645 F.3d at 1010.  If Ms. Mace successfully showed a *prima facie* case, the burden of persuasion would shift to defendant to show it would have dismissed Ms. Mace or refused to reemploy her even without her military service.  See 38 U.S.C. § 4311(c)(1); Rademacher, 645 F.3d at 1010; Hays, 753 F. Supp. 2d at 902.

An employer may be subject to a claim of discrimination if it fires a service member while that service member is on military leave.  Dorris v. TXD Services, LP, 753 F.3d 740, 744-45 (8th Cir. 2014).  In that case, Dorris had been employed by TXD when he was activated to serve in the military for approximately one year.  Id. at 741-42.  TXD terminated Dorris' employment because he failed to show up to work.  Id.  Before Dorris' military service ended, TXD went out of business, selling its assets to Foxxe Energy Holdings, LLC.  Id.  TXD gave Foxxe a list of its employees, their job titles, job descriptions, and current salaries; Foxxe hired all of TXD's employees.  Id.  TXD did not include Dorris' name on the list of employees tendered to Foxxe. Id.  Although Dorris eventually obtained employment with Foxxe about six months after his military service ended, he brought a USERRA claim against TXD arguing that TXD had violated his rights by not including his name on the list of employees tendered to Foxxe.  Id.

23

The Eighth Circuit rejected Dorris' reemployment claim, noting that TXD could not have reemployed Dorris because it was out of business when Dorris' military service ended.  Id. at 744.  But USERRA guarantees a service member's "rights and benefits" while he is on leave.  Id. (citing 38 U.S.C. § 4316(b)(1)).  "Rights and benefits" includes "any advantage . . . that accrues by reason of an employment."  Id. (citing 38 U.S.C. § 4303(2); Clegg, 496 F.3d at 930-31)).  This right to benefits is not dependent on how the employer characterizes the service member's status during leave—i.e. whether the service member is considered "employed," "on furlough" or "unemployed."  Id. (citing 20 C.F.R. § 1002.149).  Thus, the court concluded whether being on the list of employees TXD tendered to Foxxe was a factual issue about which genuine material disputes existed, preventing summary judgment.  Id.

In Maxfield, the court held a genuine issue of material fact was presented where the proximity between the employer's adverse employment action and the employee's military leave was close and the proffered reason for the action was inconsistent with other actions of the employer.  Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 552 (8th Cir. 2005).[8]  In that case, the adverse employment action occurred the very day Maxfield returned from military service.  Id.  In addition, someone identifying themselves as Maxfield's "boss" had twice called Maxfield's commanding officer in different years inquiring whether Maxfield was indeed on military duty and whether his attendance was

---

[8] After the Eighth Circuit reversed the district court's grant of summary judgment to the employer, Maxfield tried his case to a jury and lost.  The Eighth Circuit affirmed the jury's defense verdict.  See Maxfield v. Cintas Corp., 563 F.3d 691 (8th Cir. 2009).

"imperative."  Id.  The court also held discriminatory animus could be read into the fact Maxfield's supervisors traveled to the military base while Maxfield was on leave to discuss his job performance.  Id.

Here, the court finds no evidence that Ms. Mace's military service was a motivating factor in the defendants' failure to rehire her.  Mr. Willis testified he would have replaced and not rehired any employee who was gone for three weeks, regardless of the reason.  This testimony at trial is consistent with defendants' early communications with Ms. Mace:  they told her she was gone, so she was replaced.  Period.  Although unlawful, this myopic rationale rings true to the court.  As does defendants' ridiculous explanation that they wanted to save $11 per month on the When I Work app by keeping the number of employees enrolled on the app to 11 employees or under.

Unlike claims under § 4312, a facially neutral reason for the employer's adverse action defeats the claim under § 4311.  The statute specifically provides no liability attaches where the employer proves it would have taken the same action in the absence of military service.

This case contains no circumstantial or direct evidence that any of the three defendants expressed any hostility toward the military, those enrolled in the military, or military service.  None of the defendants questioned Ms. Mace's need or desire to serve her country.  None of the defendants called up her commanding officer and asked whether she was really present and required to be on leave.  No dissatisfaction was expressed by Mr. Willis when Ms. Mace told him of her National Guard obligations.  The record is devoid of any scent of

discriminatory intent.  Accordingly, the court finds in favor of defendants on Ms. Mace's § 4311 claim.

### 3.      Willfulness

To reiterate from the overview above, "willful" means the employer knew it was violating USERRA or acted with reckless disregard to whether it was doing so.  See 20 C.F.R. § 1002.312.  Cf. Trans World Airlines, Inc., 469 U.S. 125 (interpreting the term "willful" under the Age Discrimination in Employment Act to mean the employer knew its conduct was prohibited or it acted with reckless disregard to whether its conduct was prohibited).  The burden is on the plaintiff to show willfulness.  Davis, 961 F. Supp. 2d at 736 (citing Paxton, 712 F. Supp. 2d at 1021) (citing Massey Yardley Chrysler Plymouth, Inc., 117 F.3d at 1250)).  Merely knowing that a military beneficiary was asserting a USERRA claim is not, by itself, reckless disregard where, for example, the employer's decision was based on the exercise of business judgment such as the employer's financial hardship.  Duarte, 366 F. Supp. 2d at 1048.  Where the employer failed to respond to the reinstatement request for over two months, willfulness was found.  Serricchio, 658 F.3d at 191.

Willfulness is not the same as discrimination.  As indicated above, § 4312 is a rather strict-liability statute.  Section 4311 is not.  One could be willful about one's violation of § 4312 without having a discriminatory motivation.  Here, the court finds Mr. Willis and Kickbox acted willfully.  After Ms. Mace's telephone conversation with Mr. Borchardt, Mr. Willis was on notice that she was asking not only for reemployment, but that by denying her that

reemployment, she believed defendants were in violation of the law.  It is true that Mr. Willis then attempted to telephone Ms. Mace and she did not answer. But he did not leave a voice message offering to reemploy her.  He did not text her with that message either.  And he did not write her a letter to that effect either until three weeks later and even then not until after another employee had quit and he needed to hire a replacement employee.  These actions certainly evidence a reckless disregard for the strict liability reemployment provisions of USERRA pursuant to § 4312.

### 4.    Who is a Proper Defendant for Ms. Mace's USERRA Claim?

USERRA defines "employer" in pertinent part as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including—a person [or] organization . . . to whom the employer has delegated the performance of employment-related responsibilities."  See 38 U.S.C. § 4303(4)(A)(i).

Courts have held an "employer" under USERRA includes individuals who have the power and authority to hire and fire personnel, even though they may not be the person or organization whose name appears on the employee's pay stub.  Rivera-Cartagena v. Wal-Mart Puerto Rico, Inc., 767 F. Supp. 2d 310 (D.P.R. 2011) (citing Empress Casino Joliet Corp. v. NLRB, 204 F.3d 719, 721 (7th Cir. 2000); NLRB v. Attleboro Assocs., Ltd., 176 F.3d 154, 164 (3d Cir. 1999); Caremore, Inc. v. NLRB, 129 F.3d 365, 369-70 (6th Cir. 1997)).

In Brandsasse v. City of Suffolk, VA, 72 F. Supp. 2d 608, 617-18 (E.D. Va. 1999), the court denied a Rule 12(b)(6) motion to dismiss the city's Director

27

of Personnel who had been sued in his individual capacity under USERRA. The Director had the power to hire and fire city employees, including the plaintiff.  Id.  As such, he could not escape liability under USERRA by claiming he was not an "employer" within the meaning of the Act as a matter of law.  Id. (citing Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423 (E.D. Pa. 1998); and Jones v. Wolf Camera, Inc., 1997 WL 22678 at *1 (N.D. Tex. Jan. 10, 1997)).

In a decision under the Veterans' Reemployment Rights Act (VRRA), which contained no definition of the term "employer," this district looked to the definition of "employer" under USERRA.  See Novak v. Mackintosh, 919 F. Supp. 870, 877 (D.S.D. 1996).  The court concluded that individuals as well as entities could be held liable for failure to reemploy a veteran after a term of military service.  Id.  The court noted that USERRA, enacted after the VRRA, was intended to improve rather than replace the VRRA.  Id.  The court noted the legislative history of USERRA indicated Congress intended the definition of "employer" under USERRA to be the same as the definition of that term under the Fair Labor Standards Act (FLSA).  Id.  Supervisors and corporate officers could be held liable individually under the FLSA.  Id.  Therefore, the court held that individual liability was available under VRRA, USERRA and the FSLA.  Id.

Applying these principles to the case at hand, the court concludes David Borchardt is not subject to individual liability for Ms. Mace's USERRA claim. David Borchardt had no power to fire employees.  Additionally, although he had the power to add, delete and shift around employees on the When I Work

schedule, he could only do so to the extent the employee's name was available to him on the When I Work app.  Mr. Borchardt had no authority to add or delete employees' names from the When I Work app.  Accordingly, he cannot be held liable for Ms. Mace's claim.

Corey Willis as the owner of Kickbox had the authority to hire and fire employees as well as to add or delete their names from the When I Work app. He is subject to individual liability under USERRA.  Accordingly, he shares liability for the verdict in this case jointly and severally with Kickbox.

**5.    Damages**

Ms. Mace requests lost wages for six weeks, from August 8, 2016, until she found employment elsewhere on September 19, 2016.  She requests reimbursement at the rate of $12 per hour for 30 hours per week.  The court rejects this request because it is not supported by the evidence.

Although Ms. Mace was desirous of working 30 hours per week, she averaged only 13.6 hours per week for the period of time from the date she was hired until she left for military service.  She never routinely worked 30 hours per week.  Therefore, the court will award $979.20 in lost wages calculated as follows:  13.6 hours per week x 6 weeks x $12 per hour.  The court will award an identical amount of $979.20 in liquidated damages for Mr. Willis and Kickbox's willful violation of § 4312.

Ms. Mace is also entitled to an award of reasonable attorney's fees, expert witness costs, and litigation expenses.  See 38 U.S.C. § 4323(h); 20 C.F.R. § 1002.310.  If Ms. Mace wishes to receive such an award, she is directed to

submit a request for an award of attorney's fees and any other allowable expenses pursuant to local rules of this court.  See DSD LR 54.1.

## CONCLUSION

Based on the foregoing facts, law and analysis, the court finds:

1.  Plaintiff Kieshia Mace is entitled to judgment on her claim under § 4312 of USERRA as against defendant Kickbox and defendant Corey Willis.

2.  Judgment in favor of David Borchardt will be entered on Ms. Mace's § 4312 claim as he is not an employer under USERRA.

3.  The court finds all three defendants are entitled to judgment against Ms. Mace on Ms. Mace's claim under § 4311 of USERRA.

DATED April 21, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

30